IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-60542
_____

WILMA NICOLE STOUT, on behalf
of herself and all others
similarly situated,

                                        Plaintiff-Appellant,

        versus

BAXTER HEALTHCARE CORPORATION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

February 19, 2002

Before GARWOOD, JOLLY and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

    In this putative class action Plaintiff-Appellant Wilma Stout

(Stout) sued Defendant-Appellee Baxter Healthcare Corp. (Baxter)

pursuant to Title VII of the Civil Rights Act of 1964, as amended

by the Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. §

2000e(k).[1]  Stout appeals a summary judgment in favor of Baxter and the denial of her cross motion for summary judgment.  Finding no error, we affirm.

## Facts and Proceedings Below

Stout was hired by Baxter as a material handler in May of 1998.  Pursuant to Baxter's standard policy, Stout was a probationary employee for the first ninety days of her employment.  During this probationary period, Baxter evaluates new hires' job skills and performance.  Probationary employees are subject to a strict attendance policy: anyone who misses more than three days during the period is terminated.  Baxter does not provide vacation time or medical leave for probationary employees.

Stout, who was pregnant during the probationary period, received positive performance reviews and maintained a perfect attendance record during her first two months.  But, beginning on August 14, 1998, Stout was absent for more than three days of work after she experienced early labor and suffered a miscarriage that rendered her medically unable to work for over two weeks.  Stout notified her supervisor of her condition immediately, and provided a medical excuse a week later, but Baxter terminated Stout on

---

[1] Stout is only asserting a claim under the PDA; the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, is not at issue in this case.  The FLMA does not apply to employees, such as Stout, who have been employed less than twelve months or who have worked less than 1,250 hours during the previous twelve months.  *See* 29 U.S.C. § 2611(2)(A).

August 21 because her absenteeism was clearly in excess of that permitted during the probationary period.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), Stout sued Baxter claiming pregnancy discrimination under the PDA and alleging that she was fired "because of" her pregnancy and that Baxter's probationary attendance policy has a disparate impact on pregnant employees. Baxter moved to dismiss, or, in the alternative, for summary judgment, arguing that Stout had failed to state a cause of action under the PDA and to create a genuine issue of material fact as to whether Baxter had discriminated against her on the basis of her pregnancy. Stout also filed a motion for summary judgment on the issue of liability, arguing that Baxter had failed to raise a fact issue as to whether Stout was fired because of her pregnancy and whether Baxter's probationary policy had a disparate impact on pregnant women. The district court denied Stout's motion but granted Baxter's motion for summary judgment.

## Discussion

We review a grant of summary judgment *de novo*. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).

Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination:

> "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work...."

42 U.S.C. § 2000e(k). Stout alleged that she was the victim of two types of discrimination prohibited by Title VII: disparate treatment and disparate impact.

## Disparate Treatment

Stout's claim of disparate treatment has no merit. She argues that she was fired "because of" her pregnancy. But, to the contrary, *all* of the evidence in the record indicates that she "was fired because of her absenteeism, not because of her pregnancy." *Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 583 (7th Cir. 2000). There is no evidence she would have been treated differently if her absences had been due to some reason unrelated to pregnancy or if

-4-

she had been absent the same amount but not pregnant. Baxter's policy does not in any way mention or focus on pregnancy, childbirth or any related medical condition. So far as here relevant, it merely limits the permissible absenteeism, on any basis, of all probationary employees. Although Baxter's policy results in the dismissal of any pregnant or post-partum employee who misses more than three days of work during the probationary period, it equally requires the termination of any non-pregnant employee who misses more than three days. There is no evidence in the record that Stout was treated any differently than any other employee who failed to comply with Baxter's probationary attendance policy. Such a policy does not violate the PDA: "[T]he [PDA] does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked." *Id*. (collecting cases). The district court properly granted Baxter's summary judgment motion with respect to her disparate treatment claim.

## Disparate Impact

The Supreme Court has explained disparate impact in the following way: "[Disparate impact claims] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Brotherhood*

*of Teamsters v. United States*, 97 S.Ct. 1843, 1854-55 n. 15 (1977) (citations omitted). To establish a *prima facie* case of disparate impact, a plaintiff must both identify the employment practice that has the allegedly disproportionate impact and establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination. *See Watson v. Ft. Worth Bank and Trust*, 108 S.Ct. 2777, 2788 (1988). Ordinarily, a *prima facie* disparate impact case requires a showing of a substantial "statistical disparity between protected and non-protected workers in regards to employment or promotion." *Munoz v. Orr*, 200 F.3d 291, 299-300 (5th Cir. 2000).

Although normally a plaintiff must provide comparative statistical evidence demonstrating a disparity in impact of a particular policy, in *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810 (5th Cir. 1996), we held that a plaintiff could prove a *prima facie* disparate impact case without statistical evidence. In *Garcia*, the plaintiff attempted to return to her job after complications from pregnancy required her to miss approximately one month of work. Garcia's employer refused to allow her to return to work, on the grounds that her pregnancy disqualified her from being able to lift 150 pounds. The hospital, Garcia's employer, contended that lifting 150 pounds was a *bona fide* job requirement, but admitted that it did not test Garcia's lifting capabilities when she was hired, that it did not test any current employees, and

that it also did not test job applicants.  Garcia argued that the lifting requirements were artificial and that no nurse was actually required to lift that amount as part of his or her work.  *Id*. at 812.  At the conclusion of trial, the district court granted the hospital's Rule 50 motion on the basis that Garcia had failed to make out a claim for disparate treatment.  Even though Garcia had not provided any statistical comparison demonstrating a disparate impact, we remanded the case for further proceedings on this issue. We held that Garcia did not necessarily have to offer comparative statistical evidence to prove a *prima facie* disparate impact case: "If all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds, then they would certainly be disproportionately affected by this supposedly mandatory job requirement for [employees] at the Hospital. Statistical evidence would be unnecessary if Garcia could establish this point."  *Id*. at 813.

There is no evidence that Stout (or any other pregnant probationary employee) was treated any differently than any other probationary employee who missed work.  In fact, Stout repeatedly asserts in her brief that Stout was treated exactly the same as any other employee who was unable to work.  Stout's focus is on the policy itself; Stout claims that the policy affects all pregnant women and that therefore she has provided sufficient evidence to prove a *prima facie* disparate impact case.

Stout has provided expert testimony that no pregnant woman who gives birth will be able to work for at least two weeks.  We agree with Stout that this does constitute evidence that "all or substantially all" pregnant women who give birth[2] during the probationary period will be terminated.  Stout argues that under *Garcia*, she has provided evidence sufficient to establish a prima facie case of pregnancy discrimination.  If Stout's interpretation of *Garcia* was correct, we might agree.  However, we decline the invitation to expand *Garcia* to the extent Stout's argument requires.

In effect, *Garcia* provides a procedural short cut to PDA plaintiffs.  In certain situations a Title VII plaintiff is relieved of a burden they would ordinarily bear: the production of statistical evidence comparing the effects of a challenged policy on protected and unprotected groups of employees.  However, when the *Garcia* rule is applied to cases (such as this one) in which a plaintiff challenges only an employer's limit on absenteeism the rule produces an effect which is contrary to the plain language of the statute.  It is the nature of pregnancy and childbirth that at some point, for a limited period of time, a woman who gives birth will be unable to work.  *All* job requirements, regardless of their nature, affect "all or substantially all pregnant women."  If

_____

[2] The PDA applies to "pregnancy, childbirth, [and] related medical conditions...."  42 U.S.C. § 2000e(k).

*Garcia* is taken to its logical extreme, then every pregnant employee can make out a *prima facie* case against her employer for pregnancy discrimination, unless the employer grants special leave to all pregnant employees. This is not the law–the PDA does not require preferential treatment of pregnant employees and does not require employers to treat pregnancy related absences more leniently than other absences. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 208 (5th Cir. 1998).

Accordingly, we are unwilling to extend the *Garcia* rule to those disparate impact claims, such as this one, in which the plaintiff's only challenge is that the amount of sick leave granted to employees is insufficient to accommodate the time off required in a typical pregnancy. To hold otherwise would be to transform the PDA into a guarantee of medical leave for pregnant employees, something we have specifically held that the PDA does not do. *See id*. at 206-08. Such a rule would also be distinctly at odds with the language of the statute, which requires that pregnant employees be treated *the same* for *all* employment related purposes as other employees with respect to their ability or inability to work. *See* 42 U.S.C. § 2000e(k) ([Women affected by pregnancy] "shall be treated *the same* for *all* employment related purposes ... *as other persons not so affected but similar in their ability or inability to work* ....") (emphasis added). We therefore reject Stout's argument that she proved a *prima facie* disparate impact case simply

by showing that Baxter's policy affected all or substantially all pregnant women who would give birth during or near to their probationary period.

The present case does not involve any claim that any of Baxter's job requirements are not actual, legitimate requirements of the job. Nor does Stout claim that Baxter's leave policy treats a class of disabilities which includes pregnancy less favorably than other classes of disabilities that do not include pregnancy. And, Stout has no evidence that Baxter has in any way applied its policy unevenly or has favored non-pregnant employees. In the end, Stout's claim in this case is simply that she should have been granted medical leave that is more generous than that granted to non-pregnant employees. This the PDA does not require.

## Conclusion

The order of the district court granting summary judgment for Baxter is

AFFIRMED.