Cynthia QUARANTA, Plaintiff,

v.

**MANAGEMENT SUPPORT,
et al, Defendants.**

No. 01–0638–PHX–ROS.

United States District Court,
D. Arizona.

March 31, 2003.

Susan Joan Martin, Daniel Lee Bonnett, William Karl Hylen, Martin & Bonnett PLLC, Phoenix, AZ, for Plaintiff.

John Mark Ogden, Robert Shawn Oller, Littler Mendelson PC, Phoenix, AZ, for Defendants.

## ORDER

SILVER, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 34], filed March 8, 2002. Plaintiff Cynthia Quaranta is suing Defendants Management Support, the Frankel Family Trust (d/b/a Management Support), and Edward B. Frankel, Trustee ("Defendants") for discrimination of basis of sex (female / pregnancy) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff filed ·a Response on April 10, 2002 [Doc. # 40] and Defendants filed a Reply on April 29, 2002 [Doc. # 46]. For the reasons explained in this Order, Defendants' Motion for Summary Judgment will be denied.[1]

---

1. The Court vacated the hearing scheduled for November 8.2002, because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions and oral argument would not have aided Court's

## I. Facts [2]

Management Support is a property management company that manages residential apartment properties in Arizona and other states. DSOF ¶ 1. On August 18, 1997, Management Support hired Plaintiff, Cynthia Quaranta, for a data entry position at one of its managed properties, the Meridian. DSOF ¶¶ 2, 3. Plaintiff's immediate supervisor was an apartment manager, who was in turn supervised by a Regional Asset Manager. DSOF ¶¶ 4, 5. Though personnel changed over time, Plaintiff's apartment manager at the time of her termination was Christie Murray ("Murray") and the Regional Asset Manager was Paul Conrad ("Conrad"). DSOF ¶¶ 28, 37, PCSOF ¶ 40. Arizona employees of Management Support are not eligible for leave under the Family Medical Leave Act ("FMLA") because Management Support employs fewer than fifty employees in Arizona. DSOF ¶ 9. Management Support does have a set of leave policies that allow an employee to take three personal leave days per year plus a number of vacation days that accrue over time (collectively "leave time"). PCSOF ¶¶ 11–14.

On or about December 8, 1997, Plaintiff learned she was pregnant. DSOF ¶ 16. Plaintiff initially requested six weeks of leave to recover from giving birth, a request which was rejected in a meeting on December 23, 1997 with Michael Kron ("Kron"), Chief Operating Officer of Management Support. DSOF ¶¶ 23, 24. In May of 1998, Plaintiff again made a request for six weeks of leave, which was denied by Conrad, though he informed Plaintiff that she could use her accrued leave time to recover from giving birth. PCSOF ¶ 31. Thereafter, Plaintiff applied for thirteen days of leave time in August. DSOF ¶ 32. Though Defendants now claim that Plaintiff was only eligible for eight days of leave at that time, Conrad approved Plaintiff's request for thirteen days of leave. PCSOF ¶ 35.

Around June 15, 1998, Conrad hired Deborah Fisher ("Fisher") as an assistant manager, and allegedly told her that she would move into the data entry position after Plaintiff left. PCSOF ¶ 48. Plaintiff helped train Fisher to do the data entry work, but told Fisher that she would be returning after her leave time expired. PCSOF ¶¶ 49, 51. After Plaintiff was terminated, Fisher assumed Plaintiff's data entry role. Fisher Depo at 56–7.

On July 22, 1998, Plaintiff began to experience labor pains and called Murray to inform her that she would not be coming into work that day. DSOF ¶ 39. According to Plaintiff, the following day, Murray called her while Plaintiff was in the hospital recovering from childbirth and told her she had been terminated. PCSOF ¶ 40. According to Murray's testimony, Conrad ordered Murray to note that Plaintiff had voluntarily quit on Plaintiff's checkout form. PCSOF ¶ 55. In early August, when Plaintiff returned to Meridian to complete the administrative details of her termination, Plaintiff refused to sign the form indicating that she had quit, and insisted she had been fired. PCSOF ¶ 55. On August 8, 1998, Plaintiff filed a charge of discrimination with the EEOC and on

decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.,* 171 F.3d 1197, 1200 (9th Cir.1999); *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific, Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir.1991), *cert denied,* 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992).

**2.** The facts are taken from Defendant's Statement of Facts ("DSOF") and Plaintiff's Controverting Statement of Facts ("PCSOF"). Because the facts are viewed in the light most favorable to the non-moving party on summary judgment, Defendant's Statement of Facts is cited only when Plaintiff has admitted the relevant fact.

August 30 received a Determination from the EEOC finding "reasonable cause to believe that [Defendants] violated the Title VII in that [Defendants] terminated [Plaintiff] due to her pregnancy." PCSOF ¶ 56. Aff of Brown, Exh. 6 to PCSOF. Thereafter, Plaintiff timely initiated this suit.

## II. Analysis

### A. Legal Standards

#### 1. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. However, because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge, ... [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

#### 2. Pregnancy Discrimination

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), prohibits discrimination of the basis of sex. In 1978, Congress passed the Pregnancy Discrimination Act, amending Title VII to clarify that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical condition." 42 U.S.C. § 2000e(k). The amendment also provides that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work..." *Id.* Pregnancy discrimination cases are thus analyzed under the familiar rubric of other Title VII claims. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The analysis of a disparate treatment claim under Title VII is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff

must first establish a *prima facie* case of discrimination, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. *See Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001). In order to prevail, the Plaintiff must then show that the employer's purported reason for the adverse employment action is merely a pretext for a discriminatory motive. *Id.*

 The plaintiff's *prima facie* case requires a showing that "give[s] rise to an inference of unlawful discrimination." *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiff may establish a *prima facie* case by presenting direct evidence of discriminatory intent. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998); *see also Tempesta v. Motorola, Inc.*, 92 F.Supp.2d 973, 979–980 (D.Ariz.1999). Alternatively, a plaintiff can establish a *prima facie* case circumstantially, by meeting the four requirements outlined in *McDonnell Douglas:* the plaintiff (1) is a member of a protected class, (2) performed according to the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than other employees similarly situated. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). Finally, "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII ... claims on summary judgment is minimal and does not need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994).

 "Once a *prima facie* case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Wallis*, 26 F.3d at 889. The burden then shifts back to the plaintiff to show that the employer's stated reason is a pretext. *See Godwin*, 150 F.3d at 1220 (9th Cir.1998). At the pretext stage, "[w]hen the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* at 1221. However, where plaintiff relies on indirect evidence to show that the defendant's stated motive is not the actual motive, "[s]uch evidence ... must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex." *Id.* at 1222.

**B. Direct Evidence**

 Plaintiff initially attempts to establish her *prima facie* case through use of direct evidence. Direct evidence of discrimination is that which shows discriminatory animus "without inference in presumption." *Godwin*, 150 F.3d at 1221 (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.1994)). Here, Plaintiff claims that two of her supervisors told her directly that she would be terminated once she gave birth.

First, Plaintiff claims that Kron told her, during a conversation in or around December 1997, that she would be terminated upon the birth of her child. PCSOF ¶ 24. However, the undisputed evidence shows that this is not a completely accurate characterization of the conversation. According to Defendant, DSOF ¶¶ 23, 24, Plaintiff met with Kron and asked for six weeks of leave following the birth of her child, and Kron responded that if she took six weeks off, it would be treated as a termination. Plaintiff admits these facts. PCSOF ¶¶ 24, 25. Plaintiff testified that after Kron told her she could be terminated for six weeks

of leave, Kron said he would "look into it," and then nothing else was said. Quaranta Depo at 63–4. The reasonable interpretation of the Kron conversation is that Plaintiff would be terminated if she took six weeks off, not that she would be terminated once she gave birth. In fact, Plaintiff confirms that this was her contemporaneous understanding of the conversation in her deposition.[3] *See* Quaranta Depo at 63. Plaintiff provides no evidence that Kron told her that her pregnancy, and not a violation of the leave policy, would be grounds for dismissal.

■ Next, Plaintiff claims that Conrad told her on or about May 5, 1998 that she would be terminated upon giving birth. PCSOF ¶ 31. Again, Plaintiff's pleadings fail to clarify the full extent of the conversation. Plaintiff conceded in her deposition that Conrad told her that she would be terminated for taking six weeks leave, but that she could take her vacation time to give birth, and still return to work.[4] Quaranta Depo at 69, 76. When asked whether at the end of the Conrad conversation, "you [Plaintiff] no longer believed that you would be fired just simply by virtue of having the baby, correct?", she answered, "Not by virtue of having a baby, no." Quaranta Depo at 76. Plaintiff's own admission establishes that she could be terminated for taking off six weeks, but not for taking a shorter amount of vacation time to recover from childbirth.

■ In sum, Plaintiff presents no direct evidence that she was terminated because of her pregnancy. She concedes in her deposition that Kron and Conrad told her she would be terminated if she wanted to take off more leave time than was allowed under company policy. As further discussed in the next section, unexcused absences from work, even if due to pregnancy, are permissible grounds for termination. *See, e.g., Dormeyer v. Comerica Bank–Illinois*, 223 F.3d 579, 583 (7th Cir. 2000). The Pregnancy Discrimination Act does not mandate a maternity leave policy, and the parties concede that Defendant was not required by law to have one. DSOF ¶ 9, PCSOF ¶ 9. Therefore, Kron and Conrad's stated reasons for the threat of termination were neutral, and Plaintiff has no direct evidence of discrimination.

### C. Indirect evidence

#### 1. *Prima facie* case

##### a. The legal standard

Plaintiff also contends that she can make out a circumstantial case of discrimination under the *McDonnell Douglas* model. However, the parties dispute the correct application of the *McDonnell Douglas* framework regarding pregnancy discrimination cases. Generally, a plaintiff must satisfy four elements to establish a *prima facie* case indirectly: (1) she belongs to a

---

**3.** "Q: So it was your understanding that if you took one day off for your pregnancy, you would be terminated?

 A: No.

 Q: What was your understanding?

 A: I needed six weeks off to recover from the delivery, and it was that length of time.

 Q: So your understanding when Mr. Kron said, if you take this much time off—if you take six weeks off, that would be treated as a termination, was that your understanding?

 A: Yes, that was my understanding."
Quaranta Depo at 63.

**4.** "Q: But if you wanted to take your vacation time to have the baby, you could?

 A: I asked him if I could, and he said yes." Quaranta Depo at 69.

 "Q: I see. So then you understood that you could take 10 days of vacation to have the baby and return to work?

 A: Yes.

 Q: Is that your understanding?

 A: Yes. That's when he told me, I had to fill out a form, and he would have to approve it." Quaranta Depo at 76.

protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably. *Chuang,* 225 F.3d at 1123 (9th Cir.2000) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). The two parties concede that Plaintiff meets the first three elements of the framework. But the parties dispute whether *Chuang* states the correct test for the fourth element in this case.

Defendants read the fourth element in *Chuang* to mean that Plaintiff must provide evidence of similarly situated employees who were not terminated for taking vacation time in excess of the company policy. According to Defendants, Plaintiff bears this burden of comparison to other employees at the *prima facie* stage. Plaintiff, however, argues that the fourth element of the framework can be satisfied merely by providing comparison to Plaintiff's replacement after she was fired. Plaintiff contends that the fourth element should be that "her position remained open and was ultimately filled by a non-pregnant employee." *Atchley v. Nordam Group, Inc.,* 180 F.3d 1143, 1148 (10th Cir.1999), *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir.1998).[5]

The two standards impose substantively different requirements on the plaintiff at the *prima facie* stage. If a plaintiff was merely required to show that she was re-placed by a non-pregnant employee, then the burden will shift to the employer to show that the plaintiff was terminated for neutral, work-based reasons, such as a violation of the leave policy. The plaintiff then could provide evidence that the policy was applied pretextually, including evidence that it was applied inconsistently. However, if the plaintiff must present evidence of similarly situated individuals at the *prima facie* stage, but fails to do so, then the plaintiff will never have the opportunity to show that the firing was pretextual. In many cases, this sequence of proof will make no difference, though it will in a case where Plaintiff's best evidence of pregnancy discrimination is that her employer hired and trained an employee to be her replacement, and fired her in possible contravention of its own leave policies. The employer might claim that it treated all its employees in such an equally shabby manner; the issue is whether the Plaintiff must prove in her *prima facie* case that it did not, or wait to see if Defendant offers this explanation as a defense.

▆▆▆ After reviewing a number of Title VII cases, the Court concludes that plaintiff can *either* show similarly situated individuals were treated differently *or* that she was replaced by a non-pregnant employee, in order to make out a *prima facie* case. The Sixth Circuit has embraced this position, holding that "showing that similarly situated non-protected employees were

---

**5.** Plaintiff also proposes that the fourth element be phrased as the "protected activity and the adverse employment action were causally connected," *Gleklen v. Democratic Congressional Campaign Comm., Inc.,* 199 F.3d 1365, 1368 (D.C.Cir.2000), or that there is "a nexus between her pregnancy and the adverse employment decision." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 658 (6th Cir.2000). Plaintiff's reliance on *Gleklen* is clearly misplaced, since the cited passage is taken from an analysis of a retaliation claim.

However, *Gleklen* relies on *Pendarvis v. Xerox Corp.,* 3 F.Supp.2d 53, 57 (D.D.C.1998), which holds that pregnancy discrimination can be shown either by proof of a causal nexus or replacement by a non-pregnant employee. In *Cline,* the fourth element was not at issue, and the logic behind the court's formulation is not explained. It is unclear whether the "causal nexus" formulation would be interpreted, but it has no apparent parallels in disparate treatment claims in the Ninth Circuit.

treated more favorably than plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the *prima facie* case—a plaintiff may satisfy the fourth element by showing either that the plaintiff was replaced by a person outside the protected class, *or* that similarly situated non-protected employees were treated more favorably than the plaintiff." *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir.2002) (quoting *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1247 (6th Cir. 1995)). The Eleventh Circuit reached a similar result in a pregnancy discrimination case in *Byrd v. Lakeshore Hosp.,* 30 F.3d 1380, 1383 (11th Cir.1994) (rejecting argument that plaintiff who was terminated for absenteeism without violating a policy must also prove that similarly-situated employees were not fired). *See also Armindo v. Padlocker, Inc.,* 209 F.3d 1319, 1321 (11th Cir.2000) (*per curiam*) ("A plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated her own policy in terminating her.").

Judge Posner, on whom Defendants rely in their briefs, outlines the same principle in *Troupe v. May Dep't Stores Co.,* 20 F.3d 734 (7th Cir.1994), also a pregnancy discrimination case. According to Judge Posner, "[t]hree types of circumstantial evidence of intentional discrimination can be distinguished," and "[e]ach type of evidence is sufficient *by itself* ... to support a judgment for the plaintiff." *Troupe,* 20 F.3d at 734 (emphasis added). One type of evidence is that similarly situated employees were treated more favorably, while another type is "evidence that the plaintiff was qualified for the job in questions but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's state reason

for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Troupe,* 20 F.3d at 734.[6]

In addition, *McDonnell Douglas* itself describes the fourth step in terms of comparison to an employee's replacement, not comparison to similarly situated individuals. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (describing fourth step as "after his rejection, the position remained open and the employer continued to seek applicants from person's of complainant's qualifications."). The Supreme Court also indicated that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the *prima facie* proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. 1817. *See also Washington v. Garrett,* 10 F.3d 1421, 1433–34 (9th Cir.1993) (in sex discrimination case, reinterpreting fourth element in cases involving reductions of force instead of direct replacement).

Finally, Ninth Circuit precedent describes the fourth element of discrimination claims in terms of *either* replacement or comparison to similarly situated individuals. In *Wallis,* the Court described the fourth element of a *prima facie* case under the ADEA (which uses the *McDonnell Douglas* framework) as "replaced by a substantially younger employee with equal or inferior qualifications," but also noted that "[p]roof of the replacement element is not always required." *Wallis,* 26 F.3d at 891. Therefore, *Wallis* suggests that comparison to other individuals outside the employee's protected class is merely an alternative to showing direct replacement by another employee. Similarly, in *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir.2002), a sex discrimina-

---

**6.** *Admittedly, the Court did not side with the plaintiff in* Troupe. *The Court clarified that* neither comparative nor pretext evidence was presented in that case. 20 F.3d at 736–37.

tion case, the Court described the fourth element as "similarly situated men were treated more favorably, or her position was filled by a man." *See also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1996) (in age discrimination case, describing proof of replacement and comparison with similar individuals as alternative ways of making *prima facie* case, and citing with approval *Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal.App.4th 189, 200, 48 Cal.Rptr.2d 448 (Cal.App. 1995), which interprets fourth element of *McDonnell Douglas* as "others not in the protected class were retained in similar jobs, and/or his job was filled by an individual of comparable qualifications not in the protected class"). Indeed, the Ninth Circuit has held that a plaintiff can make a *prima facie* case of discrimination even if he or she is replaced by a member of the *same* protected class, *see Lyons v. England*, 307 F.3d 1092 (9th Cir.2002), though an employer can still use such replacement evidence on rebuttal. In short, the Ninth Circuit has allowed a plaintiff to establish the fourth element of a *prima facie* case even in situations farther afield than direct replacement by a non-member of a protected class. Though *Chuang* states the fourth element in slightly different terms than *McDonnell Douglas* and subsequent cases, *Chuang* does not alter the substantive requirements of meeting the fourth element.

In response, Defendants rely on a number of cases from other circuits holding that pregnancy discrimination plaintiffs must present evidence of similarly situated employees to survive summary judgment. In *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir.1997), for example, the Eighth Circuit held that "as the *prima facie* elements ... demonstrate, [plaintiff] must have evidence that she was treated differently than similarly situated employees." *See also Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859–60 (5th Cir.2002)

(same holding in Fifth Circuit); *Dormeyer*, 223 F.3d at 583 (same holding in Seventh Circuit). *Lang* relies, on part, on the text itself of the Pregnancy Discrimination Act, which states that "women affected by pregnancy ... shall be treated the same ... as other persons not so affected but similar in their ability or inability to work." *Id.* (quoting 42 U.S.C. § 2000e(k)). *Lang* and its counterparts, however, neglect the first part of the Act, which defines discrimination on the bases of sex under Title VII to include discrimination "because of or on the basis of pregnancy." 42 U.S.C. § 2000e(k). Pregnancy discrimination cases are, statutorily, sex discrimination cases under Title VII, and under Ninth Circuit precedent, a Title VII plaintiff can show she was treated in a discriminatory manner by showing that she was replaced by a member of a non-protected class. Moreover, evidence of replacement only establishes a *prima facie* case; after the defendant proffers a legitimate basis for the action, absent evidence of pretext, mere evidence of replacement will be unlikely to be "specific" and "substantial" enough to survive summary judgment. *See Godwin*, 150 F.3d at 1222. To the extent that *Lang* and related cases even address similar fact patterns to Plaintiff's, they fail to explain why pregnancy discrimination cases should depart from Ninth Circuit framework for all Title VII claims.

#### b. Plaintiff's evidence

■■■ Plaintiff is unable to show that other similarly situated employees who were not pregnant were able to take additional leave time beyond company policy. Plaintiff submits some evidence regarding two employees, Sue Arnold and Deborah Fisher, neither of whom were pregnant. However, Plaintiff fails to provide sufficient evidence that those employees were

either similarly situated or granted additional leave time..

Plaintiff asserts that Sue Arnold, a manager at another Management Support property in Arizona, took additional days off when she became ill but was not terminated. PCSOF ¶ 50. Defendant has filed a Motion to Strike this evidence [Doc. # 45], and it will be granted. Plaintiff relies only on the testimony of Fisher, who said that Arnold's extra leave time was "the talk of the office." Fisher Depo at 78. Fisher, however, had no personal knowledge of the amount of Arnold's leave time or whether she exceeded her limit under company policy. Fisher even conceded that she did not know Sue Arnold's last name. *Id.* Therefore, the witness testimony lacks the requirement of personal knowledge. Fed.R.Evid. 602.

Fisher's testimony is also hearsay not subject to an exception. Fisher is purportedly relying on some out-of-court statement ("the talk of the office") to prove the truth of Arnold's absences, which is inadmissible hearsay under Fed.R.Evid. 802. Plaintiff argues that Fisher's testimony is admissible to show Plaintiff's state of mind regarding whether she could take additional leave time. However, Fisher never testified that she discussed Arnold's absences with Plaintiff, and, more to the point, Plaintiff's state of mind would not prove the truth of Arnold's absences. Finally, Plaintiff argues that Fisher was an agent of Management Support or authorized to make representations about Arnold's leave time by Management Support, such that her statements constitute admissions of a party-opponent under Fed. R.Evid. 801(d)(2)(C) or (D). Plaintiff, however, only offers evidence that Fisher was entrusted with assorted managerial tasks and data entry, and provides no evi-

dence indicating that Fisher had any responsibilities associated with Management Support's leave policy. Thus, the evidence does not establish that she had authority to speak on the subject and was speaking on a matter "within the scope of agency or employment." Fed.R.Evid. 801(d)(2)(D). The evidence of Arnold's leave time will be stricken.

■ Plaintiff also offers evidence that Fisher herself took two weeks of vacation that were in excess of her accrued leave time. Fisher Depo at 22. Fisher also testified, however, that she negotiated time off for the pre-planned two-week vacation before she began work, and that the vacation was "part of the agreement to hire." *Id.* Thus, Fisher was not "similarly situated" in all relevant respects to Plaintiff, since she negotiated additional time off before she was hired, while Plaintiff did not. *See Clayton,* 281 F.3d at 610–11. On the other hand, because Fisher was allegedly hired to *replace* Plaintiff, the fact that she was given opportunity to negotiate extra leave time independently supports an inference of discrimination. *See Clayton,* 281 F.3d at 610 (showing replacement is alternative method of proving *prima facie* case than showing comparison to similarly situated individuals).

■ Despite this lack of comparative evidence, Plaintiff meets the *prima facie* burden by showing that Conrad hired Fisher as a replacement after being informed of Plaintiff's pregnancy. Fisher has testified that when she was interviewed to be hired, Conrad told her that she would be hired as an assistant manager, but then transferred to replace the current data entry employee when that employee left.[7] Fisher Depo at 18–20.

---

7. Defendants make no objection to this testimony as hearsay, and presumably Conrad's statements are admissible under Fed.R.Evid. 801(d)(1)(D), as statements of a party-opponent's agent concerning a matter within the scope of agency or employment.

Plaintiff trained Fisher to do data entry work, and Fisher became aware that Plaintiff planned to return to work after giving birth. *Id.* at 31, 33. Concerned for her job, Fisher asked Conrad about her duties if Plaintiff returned from maternity leave. *Id.* at 70–1. Conrad assured Fisher that she could keep her job, and Fisher "got the impression from [Conrad] that he didn't plan on bringing Cynthia back." *Id.* at 70. Fisher did indeed take over data entry duties after Plaintiff was terminated. *Id.* at 56–7. This evidence is sufficient to fulfill the *prima facie* requirements of establishing that plaintiff was replaced by a non-pregnant employee. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 65 (2nd Cir. 1995) (interviewing of non-pregnant woman for plaintiff's job before beginning of plaintiff's maternity leave was "most significant" fact and supported *de minimus* burden of proof at *prima facie* stage).

### 2. Rebuttal and Pretext Evidence

In answer to Plaintiff's *prima facie* case, Defendants contend that Plaintiff was fired for violating Management Support's facially neutral leave policy. Defendants set forth a number of cases to argue that a violation of leave policy is a permissible ground for termination as a matter of law. Defendant's cases are insufficient to settle the issue, however, because they do not consider circumstances where a plaintiff was able to prove that the application of the policy was inconsistent or pretextual. *See, e.g., Stout,* 282 F.3d at 859–60 ("There is no evidence [plaintiff] would have been treated differently if her absences had been due to some reason unrelated to pregnancy or if she had been absent the same amount but not pregnant.").

Plaintiff has three items of evidence to rebut Defendant's contention that she was

fired for violating the leave policy. First, as discussed above in her *prima facie* case, Plaintiff can show that her employer hired a replacement after being informed of her pregnancy and allowed the new employee, Fisher, to negotiate for longer vacation time. Additionally, Plaintiff presents some evidence that she was fired *before* her leave expired, in contravention of Management Support's own policy. Finally, Defendants have given conflicting explanations for Plaintiff's departure at different times, initially claiming she quit, but recently claiming she was fired. These facts constitute specific and substantial evidence raising an inference that Plaintiff was terminated because of her pregnancy.

■■■ Plaintiff claims that she was terminated on July 23, 1998, before her leave time expired. Defendants respond that Plaintiff was terminated effective August 4, after her leave time had expired. Defendants also contend that Plaintiff indicated before July 22 that she would not return at the end of her leave time. Though there is some evidence to show that Plaintiff did not plan on returning after giving birth, there is sufficient evidence to raise a genuine issue of material fact that Defendants terminated Plaintiff before the end of her leave time and without knowing whether she planned to return.

Plaintiff called Murray to tell her that she was going into labor and would not be arriving at work on July 22, 1998. DSOF ¶ 39, Quaranta Depo at 113. The next day, Murray called and informed Plaintiff that she would be terminated in August after the expiration of her vacation and sick days, apparently so that Plaintiff could retain health insurance coverage throughout the month of August. PCSOF ¶ 40, Quaranta Depo at 115–7.[8] Plaintiff testi-

---

**8.** The suggestion that Murray told Plaintiff she would be terminated in the July 23 conversation is flatly contradicted by Murray.

Murray Depo at 45. The EEOC Letter recounts Plaintiff's version of events. EEOC Letter, Aff. of Brown, Exh. 6 to PCSOF.

fied that she did not recall whether Murray gave her a reason for termination, and that she did not ask. Quaranta Depo at 119–20. At no point in this sequence of events does Plaintiff state that she affirmatively told Murray that she had planned to return at the expiration of her approved leave time.

Defendants claim that they were under the impression that Plaintiff planned to take six weeks of vacation. On June 23, 1998, Plaintiff sent an email to Christie Murray, Meridian's apartment manager, which stated in part, "Due to my pregnancy, I will need approximately six weeks of unpaid leave so that I may give birth and recover from my delivery." Quaranta Depo at 86; Exh. 4. Plaintiff recounted her conversations with Kron and Conrad, indicating that they told her that she could not take six weeks of unpaid leave. *Id.* She also indicated she had not heard anything further from Kron or from "Corporate." *Id.* She then wrote, "How will my termination be handled? Will I receive my accrued vacation and personal time?" *Id.* This email could create the inference that Plaintiff planned to accept termination rather than return to work.

On the other hand, Plaintiff has evidence that she gave Defendant notice that she planned to return at the end of her leave. Plaintiff submitted a Vacation Request form on May 11, 1998, requesting either August 3 to August 14 off, or alternatively, August 4 to August 17 off. Quaranta Depo, Exh. 5. Conrad approved this vacation time on May 11.[9] Quaranta Depo, Exh. 6; DSOF¶ 36. Though the form does not indicate that the vacation days are in anticipation of giving birth, Plaintiff testified that she planned the vacation days in accordance with her expected delivery date. Quaranta Depo at 112.

Also, Murray has testified that Conrad knew Plaintiff was planning to return after her leave expired. Murray testified that Conrad ordered her to indicate on Plaintiff's Termination Checkout Sheet that Plaintiff had quit. Murray Depo at 42. Murray testified further, "I did tell him that I disagreed, that to my knowledge, she had not quit, that I had not received anything in writing, and that how were we sure that she wasn't going to come back at the end of her vacation." *Id.* Murray claims that Conrad had no response, but merely to put down that Plaintiff quit. *Id.* Murray's testimony raises the inference that Plaintiff would have been terminated whether or not she returned from her leave.[10] Moreover, it calls into question the accuracy of the second part of Defendant's entry on the Checkout Sheet (which Plaintiff refused to sign): "pregnant /

---

9. The parties dispute the actual significance of Conrad approving the leave request. Defendant claims that Conrad approved the leave from an "operational standpoint. That is, he believed that the Meridian could function without Plaintiff being present during that time." DSOF ¶ 35. Defendant's only foundation for this evidence is the Affidavit of Michael Kron, which is insufficient. Kron does not indicate how he obtained knowledge of Conrad's reasons for approving the request. Supp. Aff. of Kron ¶ 4. He does not point to any record showing such a reason nor elaborate on any knowledge that would support his conclusion about Conrad's motivations. Nevertheless, Conrad's reasons or scope of authority are not relevant for the purposes of resolving this motion, because Plaintiff was terminated before she exhausted *any* vacation days. The number of days she *could* have taken is beside the point.

10. Murray also testified that she and Conrad discussed whether or not to extend Plaintiff's health benefits the day after Plaintiff gave birth. Murray Depo at 38. This supports Plaintiff's testimony that she understood that she would be terminated, though not until August, and indicates that Conrad was considering Plaintiff's termination before her vacation days expired.

wanted eight wks off." Aff. of Auzenne, Exh. 5 to PCSOF.[11]

█ In addition, Defendants' explanation for Plaintiff's dismissal has changed over time. Murray testified that she was told by Conrad to indicate "Quit" rather than "Discharge" on Plaintiff's Termination Checkout Sheet. Despite Plaintiff's refusal to sign the form, on August 20, 1998, Dr. Frankel sent a letter to EEOC investigators that "Ms. Quaranta was not discharged from her position but, rather, quit her position effective August 3, 1998." Aff. of Auzenne, Exh. 5 to PCSOF. Defendant now contends that Plaintiff was terminated because "she had exhausted all the leave to which she was entitled under Management Support's policies." Def's Motion at 1–2. "[F]undamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *Washington*, 10 F.3d at 1434. "A rational trier of fact could find these varying reasons show that the stated reason was pretextual, for one who tells the truth need not recite different versions of the supposedly same event." *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir.1997). *See also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000) ("when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual.")

In response, Defendants present a chart of the employment records of other employees purporting to show that Management Support was consistent in timely discharging employees for violating the company's leave policy. Aff. of Kron, Exh. 1 to DSOF. The chart is inadequate to refute Plaintiff's evidence of pretext. Defendants make no attempt to comply with the requirements of Fed.R.Evid. 1006 dealing with summaries of the "contents of voluminous writings," including the requirements of producing or copying the original writings. Moreover, the chart does not even approximate an explanation of the circumstances of each employee's dismissal, because it simply lists dates of termination. Considering Plaintiff's evidence of pretext, the burden is on Defendant to .prove consistency. *See Byrd*, 30 F.3d at 1383 ("[The] only logical inference to be drawn in this case is that the [employer] policy customarily was followed. A contrary result would amount to a presumption ... that [the employer] commonly discharged employees for taking their allotted sick leave time. If such is the case, then the burden [is] on [employer] to prove this unusual scenario.").

Plaintiff has presented specific and substantial evidence that Defendants' stated reason for her dismissal was merely a pretext for discrimination. She was replaced in advance by a non-pregnant employee, she was arguably terminated before the expiration of her leave time, and Defendants' explanations for her dismissal have changed over time.

## III. Conclusion

Defendants' Motion for Summary Judgment will be denied. Plaintiff has provided substantial circumstantial evidence to create a genuine issue of material fact whether Plaintiff was terminated on the basis of the pregnancy in violation of Title VII.

Accordingly,

---

11. To the Court's knowledge, neither party indicates *who* wrote that comment on the Checkout Form, though Plaintiff both testified that she refused to sign it, and has never indicated that she wanted more than six weeks off. Quaranta Depo at 79.

IT IS ORDERED that Defendants' Motion for Summary Judgment [Doc. # 34] is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Certain Portions of Plaintiff's Additional Undisputed Facts [Doc. # 45] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Certain Portions of Defendant's Statement of Facts in Support of Defendants' Motion for Summary. Judgment [Doc. # 42] is **DENIED AS MOOT**.

IT IS FURTHER ORDERED that the parties are to prepare a Joint Proposed Pretrial Order by May 2, 2003, including motions *in limine*, a jointly proposed statement of the case, and jointly proposed voir dire questions. The parties shall submit either individually five (5) additional voir dire questions or collectively ten (10) jointly proposed voir dire questions. The parties are directed to the Court's website at www.azd.uscourts.gov (under "Judicial Officer Information") for copies of the forms. Responses to motions *in limine* are due on May 16, 2003. The Final Pretrial Conference will be held on June 9, 2003 at 1:30 p.m.