# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20209
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
February 5, 2014

Lyle W. Cayce
Clerk

STEPHEN MANLEY,

Plaintiff – Appellant

v.

INVESCO, also known as Invesco Investment Services, also known as Invesco Group Services, Incorporated, also known as Invesco Management Group; MATRIX RESOURCES, INCORPORATED; NATIONAL PROSOURCE, INCORPORATED,

Defendants – Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-02408

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant, Stephen Manley, sued Defendants-Appellees, alleging discrimination based on race, color, and gender in violation of Title VII of the Civil Rights Act of 1974, the Civil Rights Act of 1991, and Section 605 of the Fair Credit Reporting Act. The district court granted Defendants' motions for summary judgment and dismissed Manley's claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20209

## FACTUAL BACKGROUND

In 2010, Invesco contracted with two employment agencies, Matrix and ProSource, to fill a temporary job opening for a junior "Siebel developer." When the job opening was not filled after a few months, Invesco instructed Matrix and ProSource to broaden their search to consider candidates qualified for a junior Structured Query Language ("SQL") developer position who Invesco would then train on Siebel. Matrix found Plaintiff's resume on Monster.com, contacted him about the opening, recommended him to Invesco, and forwarded his resume to Rakhee Matlapudi, a senior recruiter at Invesco. Matlapudi determined that, as Manley had eight years of SQL experience, he was overqualified for the position and did not send Plaintiff's resume to Invesco's hiring manager for further consideration.

Independent of Matrix and Invesco's activities, ProSource contacted Manley about the same Invesco job opening. Manley sent ProSource a written application, in which he indicated that he had never "been convicted of a crime" and authorized ProSource to run his criminal background report. By signing the application, Manley stated that he "underst[ood] that any misrepresentation, falsification, or omission of information may be grounds for termination of the interview process, refusal to hire, or, if hired, termination of employment." ProSource subsequently interviewed Manley, administered a skills test, and contracted with a third party credit reporting agency for Manley's criminal background report. The criminal background report revealed that Manley had been convicted of driving with an invalid license in 2006, assault causing bodily injury in 2001, and theft of between $20 and $500 in 1995. ProSource thereafter decided not to refer Manley to Invesco for the SQL developer position. Later, without the assistance of Matrix or ProSource, Invesco found and hired a candidate – a woman with one year and eight months of SQL experience – to fill the SQL/Siebel developer position.

2

No. 13-20209

On June 24, 2011, Manley, proceeding *pro se*, filed an Original Complaint raising disparate treatment and impact discrimination claims based on race, color, and gender.  Manley asserts that Defendants Invesco, ProSource, and Matrix have "a pattern and a blanket policy to deny employment opportunity [sic] to individuals with criminal records which disparately impacts and adversely affects the minority applicant pools who are protected classes under law" in violation of Title VII of the Civil Rights Act of 1974, the Civil Rights Act of 1991 (42 U.S.C. § 1981), and Section 605 of the Fair Credit Reporting Act ("FCRA").  Manley further alleged that "the retrieved criminal information antedated seven years which also violated plaintiff's rights under the FCRA § 605 and was used as the sole determinant in denying plaintiff an employment opportunity."  Defendants moved for summary judgment.  On March 5, 2013, the district court issued a final judgment and dismissed the case with prejudice.  Manley timely appeals.[1]

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *LeMaire v. Louisiana,* 480 F.3d 383, 386-87 (5th Cir. 2007).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also*

---

[1] Appellees argue that Manley's brief fails to comply with the requirements set forth in Rules 28 and 32 of the Federal Rules of Appellate Procedure and in the Rules and Internal Operating Procedures of the Fifth Circuit.  Specifically, Appellees assert that Manley's brief is twice the allowed page limit, hard to decipher, repetitive, raises issues for the first time on appeal, fails to cite to the record to support assertions of purported error, and impugns the district court.  While pro se pleadings are to be construed liberally, nonconforming briefs should not be considered when doing so prejudices an opposing party. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  However, as the legal issues presented are straightforward, we do not reach Appellees' arguments as to the form and content of Manley's brief.

No. 13-20209

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  We construe all facts and evidence in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

## DISCUSSION

Manley makes three arguments challenging the district court's dismissal of his claims.[2]  Manley first argues that the district court erred in dismissing his disparate impact and disparate treatment claims against Invesco, Matrix, and ProSource.[3]  Second, he maintains that the district court erred in denying his motion for recusal.  Lastly, Manley asserts that the district court erred in its discovery rulings.

### A.    "Disparate Treatment" and "Disparate Impact" Claims

Manley first argues that the district court committed reversible error in granting Defendants' motions for summary judgment and dismissing his disparate impact and disparate treatment claims against Invesco, Matrix, and ProSource.

The summary judgment analysis is the same for claims of discrimination under Title VII and 42 U.S.C. § 1981.  *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).  Section 1981 ensures that all persons have the same right to make and enforce contracts, including "the making, performance, modification, and termination of [employment] contracts."  42 U.S.C. § 1981.  Title VII of the Civil Rights Act of 1964 prohibits employers from "fail[ing] or refus[ing] to hire . . . any individual . . . because of such

---

[2] Appellant's brief presents twenty-five issues. These issues can be grouped into three buckets for analytical clarity, as the Appellees do in their responsive briefs.

[3] The district court also granted Defendants' motion for summary judgment as to Manley's claims for FCRA violations; the court held that Manley's FCRA claims failed as a matter of law since Invesco, Matrix, and ProSource were not "credit reporting agencies" as required for liability under FCRA.  Manley does not dispute the district court's findings with respect to FCRA anywhere in his brief. Therefore, he waived his FCRA claims on appeal.

individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employment agency "to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(b).

Under Title VII, courts recognize both disparate treatment claims (involving deliberate discrimination) and disparate impact claims (involving facially neutral practices that fall more harshly on one group than another and cannot be justified by business necessity).  *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000); *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  To establish a *prima facie* case of disparate treatment, the plaintiff must demonstrate that he "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or . . . that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).  To establish a *prima facie* disparate impact claim, a plaintiff must (1) "identify the employment practice that has the allegedly disproportionate impact" and (2) "establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Stout*, 282 F.3d at 860.

The district court granted summary judgment dismissing Manley's disparate treatment and disparate impact claims against Matrix and Invesco for lack of standing.  "In order to have standing, a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Miss. State. Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008).  The district court correctly

found that Manley did not meet his burden of establishing injury-in-fact fairly traceable to Matrix. In fact, Matrix referred Manley for employment (despite his criminal record of which Matrix was unaware) and played no role in Invesco's decision not to hire Manley. As Matrix's alleged policy of declining to refer applicants with criminal records did not cause Manley injury, his disparate impact challenge against the facially neutral policy as discriminatory against Black or male applicants likewise fails. The district court also acted properly in holding that Manley could not show an injury fairly traceable to Invesco's conduct. Manley offered no evidence that, when Invesco made its decision not to interview him after viewing his resume, the company knew his race or color, as would be required to establish that Invesco's reason for not hiring him, i.e. that he was overqualified, was pretextual and to support a disparate treatment claim. As Invesco was similarly unaware of his criminal background, Manley cannot establish that Invesco's alleged policy of declining to hire individuals with criminal records had a disparate impact on him.

The district court likewise acted appropriately in dismissing Manley's claims that ProSource discriminated against him when it refused to refer him to Invesco for employment because of his criminal record. Persons with criminal records are not a protected class under Title VII, preventing Manley from basing his Title VII claim on this status, and he does not allege that ProSource failed to refer him because he was Black or male. In any event, ProSource has previously referred Blacks and males who had criminal records while failing to refer Whites who, like Manley, made misrepresentations as to their criminal records – ProSource's stated reason for declining to refer him. "[M]isrepresentations on employee documents can be a legitimate, nondiscriminatory reason for an adverse employment decision, like declining to hire or firing an employee." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009). Manley's conclusory allegations to the contrary

are insufficient to establish a genuine issue of material fact that ProSource's legitimate, nondiscriminatory reason for not referring him was false or pretextual; he thus failed to meet the summary judgment burden for his disparate treatment claim against ProSource. Given the absence of admissible statistical data or other evidence that ProSource's policy disparately impacts Blacks or males, Manley similarly failed to meet his summary judgment burden for his disparate impact claims against ProSource; these claims were appropriately dismissed.

### B.    Denial of Motion for Recusal

Manley also argues that the district court erred by denying his Motion to Recuse based on 28 U.S.C. § 455 and § 144. "Under either statute, the alleged bias must be 'personal', as distinguished from judicial, in nature." *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1020 (5th Cir. 1981). "Thus, a motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench." *Id.*; *see United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). Manley has failed to present any evidence that the district court held any personal bias against him. Instead, Manley's assertion that the district court should have recused himself is based solely on judicial rulings in the case. Accordingly, the district court was correct in denying his Motion to Recuse.

### C.    Discovery Rulings

Manley appears to contend that the district court's abatement of discovery interfered with his ability to obtain admissible discovery. It is well established that a district court can "exercise its sound discretion to restrict what materials are obtainable" in discovery. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir.

1994) (quoting *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)). "In reviewing a district court's curtailment of discovery under the Federal Rules of Civil Procedure, errors made with regard to the allowance of discovery do not require reversal unless they result in substantial prejudice to a party's case." *Id.* (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978)). Manley did not indicate what particular admissible evidence he was prevented from obtaining, and whether such discovery would constitute competent summary judgment evidence. Nor did he even allege much less demonstrate that the district court's discovery rulings caused him "substantial prejudice." Moreover, while "Rule 56 does not require that *any* discovery take place before summary judgment can be granted," the district court specifically allowed Manley to conduct additional discovery before granting ProSource's Third Motion for Summary Judgment. *Id.* at 1396 (quoting *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir. 1990)). Absent specifics as to what discovery was erroneously excluded and what prejudice such exclusion did or did not cause the plaintiff, we find no error in the district court's discovery rulings.

## CONCLUSION

Accordingly, we AFFIRM the district court's orders of dismissal.