**Opinion issued July 16, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-23-00289-CV**
_____

**HARRIS COUNTY, Appellant**

**V.**

**RONDALINA BEATTY, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-04958**

---

**MEMORANDUM OPINION**

In this interlocutory appeal, appellant Harris County (the County) challenges the trial court's denial of its plea to the jurisdiction, or alternatively, no-evidence and traditional motions for summary judgment (collectively, the Plea). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (permitting interlocutory appeal). In three issues,

the County contends the trial court erred in denying the Plea as to appellee Rondalina Beatty's claims of gender discrimination, disability discrimination,[1] and retaliation. We reverse and render.

## Background

Beatty first worked for the County in the adult probation division from 1991 to 2004. After leaving to work for a private United States Immigration and Customs Enforcement detention facility, she returned to work for the County in 2008 as a juvenile supervision officer (JSO). In 2012, Beatty was promoted to unit supervisor. From time to time, Beatty served as the acting shift supervisor, depending on the daily needs of her unit.

In November 2014, Beatty suffered an on-the-job injury when a juvenile detainee stepped on her foot, causing her right knee to buckle. As a result, Beatty underwent knee surgery, received workers' compensation benefits, and was kept off work by her physician. According to the June 4, 2015 termination letter Beatty received from Matt Shelton, Deputy Director of Administrative Services for the Harris County Juvenile Probation Department, Beatty exhausted her twelve weeks

---

[1] In its principal brief, the County characterizes its second issue as challenging whether the trial court erred in denying its plea to the jurisdiction and no-evidence summary judgment motion as to Beatty's race discrimination claim. However, the subsequent discussion concerns Beatty's disability discrimination claim, and the words "race" or "racial" do not appear again in the County's brief. Further, Beatty's complaint does not assert a claim of racial discrimination. Therefore, we construe the County's second issue as challenging the trial court's determination regarding the disability discrimination claim.

of Family and Medical Leave Act (FMLA) leave in April 2015. She then asked Deputy Director Melissa Watson for an extension of her leave through a scheduled doctor's appointment at the end of May, and Watson granted her request. However, Shelton's letter stated that Beatty had advised Shelton a week earlier that her physician would not release her to return to work for another six weeks. As a result, the County terminated Beatty's employment but encouraged her to re-apply when she "was physically able to do so."

In July 2015, Beatty filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination. Specifically, Beatty contended that she had been released "to full duty but with restrictions," and the County refused to accommodate her restrictions or engage in the interactive reasonable accommodation process pursuant to the Americans with Disabilities Act (ADA). *See* 42 U.S.C. §§ 12101–12213. The County argued that because Beatty could not perform any aspect of her job, with or without accommodation, it could not engage in the interactive accommodation process. Ultimately, the EEOC issued a dismissal and right-to-sue letter in May 2017. Beatty did not file suit with respect to her disability discrimination claim.

Following her termination, Beatty applied for three positions with the County from June to July 2015: Unit Supervisor for Courts and Transportation, Juvenile

Supervision Officer,[2] and Unit Supervisor for Residential Services. The County notes that Beatty applied for these positions prior to her release to return to work on August 7, 2015, and she was not hired for any of these positions. In January 2016, Beatty began working for the Texas Department of Criminal Justice (TDCJ). In September 2017, Beatty applied for a Female Unit Supervisor position with the County. On her application, Beatty stated that she was "willing to discuss" her reason for leaving her employment with the County in 2015.

The County received seventy-nine applications for the Female Unit Supervisor position. A five-person screening committee interviewed Beatty and thirty other female candidates. During Beatty's interview on September 20, 2017, committee member Leonta Rheams asked her why she left her employment with the County in 2015. According to Rheams, he asked the question to confirm Beatty had not left her employment for disciplinary reasons. Notes from each of the interviewers indicate that Beatty answered that she was injured on the job and could not return to work in time. The committee members and Beatty agree that no further questions were asked concerning her physical or mental ability to perform the duties of the unit supervisor position. Following the interviews, the committee recommended three other women for three open Female Unit Supervisor positions, and Watson

---

[2] As part of the mediation of her EEOC claim, the County offered Beatty a JSO position in September 2015, but she did not accept it.

approved their recommendations. The County notified Beatty that she had not been selected on September 27, 2017.

Beatty filed another discrimination charge with the EEOC on March 19, 2018, alleging sex and disability discrimination and retaliation continuing from June 2015 to December 2017. After receiving a right-to-sue notice from the EEOC on October 30, 2019, Beatty filed the subject lawsuit against the County on January 24, 2020, asserting claims for gender discrimination, disability discrimination, and retaliation pursuant to the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE §§ 21.051, 21.055.

The County filed an Answer to Beatty's suit on March 2, 2020, asserting a general denial and various affirmative defenses. It subsequently filed its "Plea to the Jurisdiction and in the Alternative, No Evidence and Traditional Motions for Summary Judgment" on November 4, 2022.

In its plea to the jurisdiction, the County argued that the trial court lacked subject-matter jurisdiction to consider Beatty's claims under the TCHRA because Beatty failed to prove essential elements of her claims and establish a waiver of the County's governmental immunity. Similarly, the County's no-evidence summary judgment alleged that Beatty failed to present evidence establishing a prima facie case of gender discrimination, disability discrimination, or retaliation. Lastly, in its

traditional summary judgment motion, the County contended that the evidence disproved at least one element of each of Beatty's causes of action.

The trial court conducted a hearing on the Plea on March 8, 2023. On April 12, 2023, the trial court signed an order summarily denying the County's plea without stating the basis for its decision. This appeal followed.

## Plea to the Jurisdiction[3]

The County argues that the trial court erred in denying the Plea as to Beatty's gender discrimination, disability discrimination, and retaliation claims.

### A. Standard of Review and Applicable Law

Governmental immunity deprives a trial court of jurisdiction over suits against a governmental unit absent the Legislature's consent to suit. *City of Hous. v. Hous. Firefighters' Relief & Ret. Fund*, 196 S.W.3d 271, 277 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Governmental immunity from suit may be asserted in a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment.[4] *Alamo Heights*, 544 S.W.3d at 770. The Legislature has waived

---

[3] A governmental entity may raise governmental immunity and challenge the trial court's jurisdiction through a plea to the jurisdiction or a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Because the County raised only jurisdictional issues in its combined plea to the jurisdiction and summary-judgment motion, we treat the entire motion as a plea to the jurisdiction. *See Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 390 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

[4] Beatty argues that the County has waived any governmental immunity defense because it did not raise the issue in any pleading prior to the plea to the jurisdiction,

immunity from suit for employment discrimination and retaliation claims arising under the TCHRA. *See* TEX. LAB. CODE § 21.254; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (*Garcia I*). The TCHRA, however, only waives governmental immunity for suits in which a plaintiff alleges sufficient facts to establish a prima facie violation of the Act. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635–36 (Tex. 2012) (*Garcia II*). Thus, whether a plaintiff has established a prima facie case of discrimination against a governmental employer under the TCHRA is a jurisdictional issue. *See id.*; *Alamo Heights*, 544 S.W.3d at 770.

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Miranda*, 133 S.W.3d at 226. "However, in some cases,

---

i.e., its answer. In response, the County argues that it raised immunity from suit in its plea to the jurisdiction, not immunity from liability, and immunity from suit can be raised for the first time in a plea to the jurisdiction. We agree with the County. The County's plea to the jurisdiction argued that Beatty failed to establish a prima facie case of discrimination; therefore, the trial court lacked jurisdiction to consider Beatty's claims under the TCHRA. These allegations attack the jurisdictional underpinnings of Beatty's suit and can be raised for the first time in a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Id.* (citations omitted).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. When the consideration of a trial court's subject-matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* Like a traditional summary judgment motion, if the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

**B.    Analysis**

**1.    Gender Discrimination**

Beatty's complaint included a gender discrimination claim against the County. The parties dispute whether the claim is one for disparate impact or disparate treatment discrimination. Both Texas and federal law recognize these as two distinct theories. *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)[5]; *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 811–12 (Tex. App.—Austin 2009, no pet.). While disparate treatment discrimination concerns employment actions that treat employees differently based on their race, gender, or other protected status, disparate impact discrimination involves employment practices or policies that are facially neutral in their treatment of protected groups but have a disproportionally adverse effect when applied to the protected group. *See Pacheco*, 448 F.3d at 787; *City of Austin v. Chandler*, 428 S.W.3d 398, 406 (Tex. App.—Austin 2014, no pet.).

On appeal, the County argues that the trial court erred in denying the plea to the jurisdiction as to Beatty's disparate treatment claim. In response, Beatty asserts

---

[5]    We may consider federal precedent in this area to the extent it is analogous to section 21.201 of the Texas Labor Code. *See, e.g.*, *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 505 (Tex. 2012).

that she never raised a disparate treatment claim—only a disparate impact claim—and the County did not challenge her disparate impact claim in its Plea below.[6]

We first consider whether the County did, in fact, challenge Beatty's allegations concerning the County's purported policy. In the Plea, under its "No-Evidence Motion for Summary Judgment" section, the County focused on the failure-to-hire claim and argued that Beatty "has no evidence that she was treated differently because of her gender," i.e., disparate *treatment*. However, in its "Traditional Motion for Summary Judgment" section, the County also contended that Beatty had no evidence to support her claim that the County's alleged policy of hiring men to supervise male inmates discriminated against her as a woman, because Beatty presented no evidence that the County posted any male-only positions during the relevant period, or that she applied for a male-only position and was rejected. While it would have been more straightforward for the County to include this argument in its "No-Evidence Motion for Summary Judgment" section, we find that the County did argue in its Plea that Beatty had no evidence to support her gender discrimination claims regarding a policy of posting male-only unit supervisor positions, whether under a disparate impact or disparate treatment theory.

---

[6] Relying on this presumed failure to challenge the correct discrimination theory, Beatty did not address the merits of her gender discrimination claim in either her response to the Plea or in her appellate brief.

10

Whether classified as a disparate impact or disparate treatment claim, Beatty's gender discrimination claim fails. If a disparate treatment claim, as the County contends, Beatty's prima facie case required proof that (1) she is a member of a protected group; (2) she applied for a position with the County; (3) she was qualified for that position when she applied; (4) she was not selected for the position; and (5) after the County declined to hire her, the position either remained open or a male was selected to fill it. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994); *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 997–98 (5th Cir. 2022) (listing similar elements for prima facie case of sex discrimination based on disparate treatment).[7]

Beatty acknowledges that females were hired for the female unit supervisor position for which she applied. Therefore, because Beatty has no evidence that a male was selected to fill the female unit supervisor position (the fifth element), the trial court erred in denying the County's plea regarding Beatty's failure-to-hire gender-discrimination claim regarding the female unit supervisor position, to the extent such a claim was alleged. *See Davis*, 14 F.3d at 1087.

---

[7]  In her brief to this Court, Beatty notes that she "stipulated in her Response to the Plea and Motions that she was not alleging sex discrimination for disparate treatment in promoting three (3) female Juvenile Supervision Officers ('JSO'), also known as Juvenile Probation Officer[s] ('JPO')." However, because the County focuses on this failure-to-hire theory, we will address that argument.

Similarly, Beatty failed to establish any disparate treatment claim concerning male-only unit supervisor positions allegedly posted during the relevant period, or that she applied for any male-only unit supervisor positions. In response to the Plea, Beatty cited her "belief" that there were male unit supervisor positions posted during the relevant time and argued that because she is female, she was disqualified from applying. Because Beatty presented no evidence of any supposed male-only positions, and Beatty admittedly did not apply for any such male-only positions (the second element), the trial court erred in denying the County's plea regarding Beatty's failure-to-hire gender-discrimination claim regarding "male-only" positions. *See id.*

If we construe Beatty's gender discrimination claim as one of disparate impact (as she contends we must), we must still conclude the claim fails.[8] Beatty argues that the County had a policy of hiring males to supervise male detainees and females to supervise females, which had a disparate impact on Beatty as a female. To defeat summary judgment on a disparate impact discrimination claim, Beatty was required to show (1) a facially neutral policy (2) that has a disproportionately adverse effect on a protected class. *Pacheco*, 448 F.3d at 791. But Beatty supplied no evidence of

---

[8] Though Beatty contends that the County never challenged a disparate impact gender discrimination claim in its Plea, we disagree for the reasons stated in footnote 7, *supra.*

12

such a policy,[9] or any such male-only job postings. Even if Beatty had brought forth evidence of such a policy, a policy that gives preference to one gender over another is not facially neutral. *See Dothard v. Rawlinson*, 433 U.S. 321, 332 (1977) (stating that Alabama Board of Corrections regulation establishing gender criteria for assigning correctional counselors to maximum-security institutions "explicitly discriminates against women on the basis of their sex"); *see also Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 188–89 (5th Cir. 1983) (use of test is specific, facially neutral selection criterion that can be shown to have causal connection to imbalance in workforce; "[t]he use of subjective criteria to evaluate employees in hiring and job placement decisions is not within the category of facially neutral procedures to which the disparate impact model is applied."); *Chandler*, 428 S.W.3d at 406–07 (finding consolidation of Airport and Park Police and Marshall's service into Austin Police Department to be facially neutral policy) (citing *Gomes v. Avco Corp.*, 964

---

9    Melissa Watson testified that following a sexual assault involving a male juvenile supervision officer working on a female floor, the County decided that it "needed to put female supervisors on the [female] floor unless it was an extenuating circumstance." Watson further testified that there were some rare exceptions to the rule where female supervisors worked a male floor (and she acknowledged that Beatty had worked both male and female floors previously), but she could not recall any instances after the sexual assault where a male supervised a female floor. However, she stated it was "not a written policy." The fact that the County preferred to staff floors with supervisors of the same gender does not show the County had a policy of only *hiring* supervisors to work on floors of the same gender. As Watson explained, it was more about how the supervisors were assigned, not a hiring policy.

13

F.2d 1330, 1334–35 (2nd Cir. 1992) (concluding "eight-year rule" for employment promotion sufficient to alert EEOC of potential disparate-impact claim)).

Moreover, Beatty was required to show she was actually injured by the alleged policy. *Fleming v. Methodist Healthcare Sys. of San Antonio*, No. SA-21-CV-01234-XR, 2024 WL 1055120, at *18 (W.D. Tex. Mar. 11, 2024) ("To establish standing to challenge a facially neutral policy, an individual plaintiff must have actually been injured by the policy.") (*citing Manley v. Invesco*, 555 F. App'x 344, 348 (5th Cir. 2014)). Because Beatty did not show the existence of such a policy or postings, she necessarily was not injured by them. Therefore, the trial court erred by denying the County's Plea.

We sustain the County's first issue.

### 2. Disability Discrimination

In its second issue, the County argues that the trial court erred in denying the Plea as to Beatty's disability discrimination claim. The TCHRA prohibits discrimination "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX. LAB. CODE § 21.105. To establish a prima facie case of disability discrimination, a plaintiff must show that she (1) has a "disability" or was regarded as disabled, (2) is "qualified" for the job, and (3) suffered an adverse employment decision because of her disability. *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421,

14

436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Nall v. BNSF R.R. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

In its Plea, the County challenged Beatty's prima facie case as to the first and third elements, arguing that she failed to establish a disability and that the committee was unaware of any disability at the time of her interview. In support of its arguments, the County pointed to Beatty's testimony acknowledging her full duty release from her workers' compensation physician prior to the September 2017 interview and her ability to handle the physical requirements of the job. Further, when asked to confirm that she did not have a disability at the time of her September 2017 interview, Beatty answered, "Correct." In response, Beatty contends that the County regarded her as disabled given her prior work injury and impermissibly discriminated against her on that basis.

The TCHRA defines a disability as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, *or being regarded as having such an impairment*." TEX. LAB. CODE § 21.002(6) (emphasis added). The TCHRA further clarifies that being "[r]egarded as having such an impairment" means a person is "subjected to [an unlawful employment practice] because of an actual or perceived physical or mental impairment, other than an impairment that is minor and is expected to last or actually lasts less than six months, regardless of whether the impairment limits or is perceived

15

to limit a major life activity." *Id.* § 21.002(12-a); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (holding that under ADA Amendments Act of 2008,[10] plaintiff "need only show that her employer perceived her as having an impairment and that it discriminated against her on that basis") (internal quotations and alteration omitted).

To the trial court, Beatty argued that the County unlawfully terminated her based on a disability in 2015, and "[b]ecause it terminated Beatty for medical reasons that had to do with a disability [in 2015], it would not be a stretch[] for a jury to reasonably conclude that Defendant would not and has not re-hired her as a Unit Supervisor because of her disability and for her engaging in protected activity." Beatty further contended that "if you violate the ADA in 2015, you will likely violate it in 2017." This is entirely speculative. First, the question of whether the County engaged in disability discrimination in 2015 by terminating Beatty is time-barred and not before us in the instant suit.[11] Second, regardless of what happened in 2015,

---

[10] Effective January 1, 2009, Congress amended the ADA. *See* Pub. Law No. 110-325, 122 Stat. 3353 (2008); *see also City of Hous. v. Proler*, 437 S.W.3d 529, 533 n.17 (Tex. 2014) (discussing same). In 2009, the Texas Legislature similarly amended the Labor Code to correspond with the federal amendments. *See Proler*, S.W.3d at 533 n.17.

[11] As the County points out, Beatty did not file suit concerning the disability discrimination claim following the EEOC's issuance of a right-to-sue letter. Further, Beatty herself admitted the following in her declaration filed with her response to the Plea: "I understand the 2015 denial claims are not timely."

Beatty does not point to any evidence supporting a conclusion that anyone involved in the decision-making process regarded her as disabled in September 2017.

In support of her contention that the County regarded her as disabled at the time of her interview, Beatty alleges that Rheams knew the reason for her termination by nature of his position "as a supervisor of Unit Supervisors."[12] Beatty does not provide any support for this conclusory averment. *See, e.g.*, *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85–86 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that affidavits that state conclusions without providing underlying facts to support those conclusions are not proper summary judgment evidence); *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.) (holding that conclusory statements in affidavits are not competent summary judgment evidence because they are not susceptible to being readily controverted). Beatty also contends that Watson, who admittedly was involved in Beatty's termination in 2015, "likely believed that Beatty would request accommodation upon her rehire and used this as a reason not to rehire her."

---

[12] Beatty also contends that Watson, who admittedly was involved in Beatty's termination in 2015, "likely believed that Beatty would request accommodation upon her rehire and used this as a reason not to rehire her." As outlined in our subsequent discussion of Beatty's retaliation claim, the record does not support a determination that Watson was the final decisionmaker with respect to the unit supervisor position sought by Beatty.

Even if we assume Rheams and Watson knew that Beatty was terminated in 2015 after an on-the-job injury and exhausting her medical leave, this does not mean, as Beatty urges, that they or anyone else on the committee regarded her as *disabled* in 2017 or that this was the reason the County did not hire her. *See, e.g.*, *Weems v. Dallas Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 729–30 (N.D. Tex. 2017) (noting conclusory nature of teacher's averment in affidavit that principal "was aware of [his] disability"; though principal knew of surgery and some physical limitations, this "[did] not mean that [principal] regarded [teacher] as being disabled" and was an "impermissible inference").

Beatty focuses on the question raised by Rheams during her interview as to why she left her employment with the County in 2015. Beatty theorizes that Rheams asked the question because "he wanted others to know about her injury and cast doubt in their minds that she may not be reliable due to medical reasons." Again, this is pure conjecture. As Beatty points out, she "was clearly eligible for rehire as her application would not have made it to that level if she were not." And again, Beatty stated in her application that she was "willing to discuss" the reason she left the County's employ in 2015. It follows that the committee would ask questions about the nature of her separation, given the "willing to discuss" language.

Because we determine that Beatty has failed to present any evidence that the County regarded her as disabled at the time it failed to hire her in September 2017,

18

we sustain the County's second issue. *See Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. Appx. 914, 922 (5th Cir. 2015) (holding plaintiff failed to establish prima facie case of "regarded as" disability discrimination where plaintiff could point to no evidence indicating employer perceived him as disabled; employer's mere knowledge of heart surgery alone did not support inference that employer regarded him as disabled); *Weems*, 260 F. Supp. 3d at 730.

### 3. Retaliation

The TCHRA prohibits an employer from retaliating against its employee for engaging in certain protected activities. TEX. LAB. CODE § 21.055. Examples of such activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding or hearing. *Id.* Here, Beatty's lawsuit alleges that the County retaliated against her for making a discrimination charge in 2015 by refusing to hire her in September 2017.

On appeal, the County contends that the trial court erred in denying the plea to the jurisdiction as to the retaliation claim because Beatty failed to make out a prima facie case of retaliation. To establish a prima facie claim of retaliation, a plaintiff must establish that: (1) she participated in protected activity, (2) her employer took an adverse employment action against her, and (3) a causal connection existed between her protected activity and the adverse employment

19

action. *Chandler*, 376 S.W.3d at 822; *Donaldson*, 495 S.W.3d at 441. If the employee establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory purpose for the adverse employment action. *Chandler*, 376 S.W.3d at 822–23; *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.).

The County does not dispute that Beatty engaged in a protected activity or that she suffered an adverse employment action. Rather, the County's arguments focus on the third element of the prima facie case: the causal connection requirement. According to the County, the only protected activity Beatty engaged in prior to her September 20, 2017 interview was her July 2015 discrimination charge, but the discrimination charge is too remote in time to be causally connected to the failure to hire Beatty in 2017. Further, the County argues that Beatty failed to present any evidence that anyone involved in the decision not to hire Beatty had knowledge of her 2015 EEOC claim. Beatty counters that (1) her EEOC charge did not resolve until July 28, 2017 and was thus much closer in time to the decision not to hire her following her September 20, 2017 interview; and (2) Melissa Watson, Deputy Director of Residential Services and the individual who approved the selected candidates for hire, had knowledge of her prior employment and termination in 2015.

Initially, we reject the County's suggestion that we may only consider the date of the filing of Beatty's EEOC charge and not any subsequent involvement in the

20

investigation of the charge in analyzing her "protected activity." The TCHRA provides that retaliation includes discrimination against a person who "testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."[13] TEX. LAB. CODE § 21.055(4). If instead we consider the date of the formal resolution of Beatty's EEOC charge—the July 28, 2017 dismissal and right-to-sue letter—only two months elapsed between that date and the County's September 27, 2017 letter notifying Beatty of the selection of another candidate for the Female Unit Supervisor position. Federal case law suggests that a temporal proximity of two months, when coupled with knowledge by the decisionmaker, can be sufficient to establish a prima facie case of retaliation. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1116 (5th Cir. 1998); *Jones v. Flagship Int'l*, 793 F.2d 714, 717 (5th Cir. 1986).

Likewise, this court has held that "[t]emporal proximity between protected activity and an adverse employment decision can be evidence of a causal connection when a person with input into the employment decision was aware of the protected activity and when the proximity is 'very close.'" *Democratic Sch. Res., Inc. v. Rock*, 608 S.W.3d 290, 314 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Alamo Heights*, 544 S.W.3d at 790); *see also Crutcher v. Dallas Indep. Sch. Dist.*, 410

---

[13] For example, Beatty points out that she participated in mediation of her EEOC claim.

S.W.3d 487, 496 (Tex. App.—Dallas 2013, no pet.) (holding that in context of prima facie case, "[t]emporal proximity may be evidence of a causal connection only when a person with input into the employment decision was aware of the protected activity"); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."). Here, Beatty contends that the final decisionmaker for the Female Unit Supervisor position, Melissa Watson, had knowledge of her 2015 EEOC charge. While the record indicates that Watson had some general awareness of Beatty's EEOC proceedings, the evidence does not support Beatty's characterization of Watson as the ultimate decisionmaker.

First, as to knowledge, Beatty notes that Watson was named in the EEOC charge. Watson testified that she (1) was "involved in the termination [of Beatty];" (2) knew Beatty was out on medical leave that later expired; and (3) would have been the one to make the recommendation for termination to the deputy director of administrative services, Matt Shelton. Regarding the EEOC proceedings specifically, Watson testified that she "wasn't really privy to all of that" but may have learned about Beatty's mediation "in passing" from Shelton. She also testified that she thought she remembered the County offering Beatty a JSO position as a

22

result of an EEOC mediation between Beatty and the County, but she did not attend the mediation or know who attended from the County.

The only individual Beatty alleges has knowledge of her EEOC claim is Watson. Importantly, Beatty admitted during her deposition that she did not tell any of the interviewers about her 2015 EEOC complaint and did not have any information that anyone on the committee knew about the charge. Beatty testified that she personally knew two of the five committee members—Mr. Rheams and Ms. Simmons. Rheams had been Beatty's supervisor at one point in her career with the County.[14] Rheams provided an affidavit averring that he "was not aware that Ms. Beatty had filed any prior EEOC complaints, and this was not a basis for her not being selected for the unit supervisor position." Another committee member, Ms. Breaux-Malveaux, provided an affidavit stating that "[d]uring the interview and selection process, there was no discussion as to whether Ms. Beatty, or any other applicant, had ever filed any prior EEOC complaints, and this was not a basis for Ms. Beatty not being selected for the Female Unit Supervisor Position."

Next, concerning the decision-making process, Watson testified that the five-person committee was composed of supervisors and facility administrators. After conducting interviews of Beatty and other candidates, the committee sent its

---

[14] The record reveals that Rheams was Beatty's supervisor at the time of her January 2014 "Employee Professional Development Plan."

23

recommendations to Watson for ultimate approval. Beatty was not on the committee's list of "top picks" for the Female Unit Supervisor position. Though Watson referred to herself as the final decisionmaker throughout her deposition, she essentially rubberstamped the committee's recommendations, as evidenced by the following testimony:

> The screening committee is composed of supervisors from the facilities, and they screen the applicants and they determine who they feel are the best qualified and send that list to me. And that's - - off that list is where we make our hiring decisions.
>
> . . . .
>
> I contact the facility administrators of the facility that has the opening and I asked them who they want off the list, and they give me who they want, and that's who I approve. . . . [It's] [t]heir choice. They get their choice of anybody they want off the final list. So, I mean, I don't ask why or why not. I said these - - this is who made the final list based on the screening and tell me who you want off that list.
>
> . . . .
>
> I am sent the resumes of the people that make the final list. And so, if - - if I am getting their names on a final list, I'm assuming there is a reasoning that the screening committee chose these individuals, and I trusted my supervisors to make that call.

Watson denied ever asking the administrators why they wanted a particular candidate from the list. She also testified that (1) she did not recall any discussions with the committee regarding the reasons certain candidates were selected, (2) did not give the committee any instructions prior to the interviews concerning what was important in assessing who would be best for the unit supervisor positions, (3) does

24

not create the screening questions used during interviews, and (4) had not read the screening questions for the Female Unit Supervisor position. She further denied seeing the list of candidates initially selected for interviews (including Beatty) and stated that she would not have known Beatty applied and was being screened for the position prior to the interview because the list of applicants would only come to her after the committee's screening and selection of finalists.

Based on the foregoing, the evidence establishes that the committee, not Watson, was the ultimate decisionmaker with respect to the unit supervisor position sought by Beatty. The committee had already decided not to advance Beatty to the next stage of the hiring process by the time Watson received the list of the committee's selections; thus, Watson was not in a position to retaliate against Beatty.[15] *See Alamo Heights*, 544 S.W.3d at 789–90 (determining that school district's adverse employment action was not causally connected to teacher's protected activity of filing EEOC charge as required for teacher's retaliation claim against district under TCHRA; although adverse employment action occurred two

---

[15] Beatty's arguments on appeal on this point are similar to the "cat's paw" theory of liability under which a plaintiff can establish an employer's liability where another employee with retaliatory motives influenced the actual decision maker to take retaliatory action against the plaintiff. *See Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015). But here, the reverse is true—even if Watson had some retaliatory animus, she did not influence the committee's decision not to advance Beatty. The committee had already made that decision by the time the list made its way to Watson's desk.

to three weeks after filing charge, principal and human resources representative made decision as to adverse employment action before they knew of charge); *see also Ackel v. Nat'l Comm'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (granting summary judgment in favor of employer on retaliation claim where employee had no evidence that decisionmaker was aware of employee's protected activity); *Tex. Health & Human Servs. Comm'n v. Enriquez*, 642 S.W.3d 21, 35–36 (Tex. App.—El Paso 2021, no pet.) (finding no causal link where, among other things, there was no evidence in record that final decisionmakers involved in plaintiff's termination had knowledge of plaintiff's earlier EEOC discrimination charge); *Marsaglia v. Univ. of Tex. at El Paso*, 22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. denied) (affirming summary judgment in favor of employer in retaliation case where employee failed to produce evidence that decisionmaker had knowledge of her protected activity and where decisionmaker filed affidavit denying he had any such knowledge).

Accordingly, based on the record before us, we hold that Beatty failed to present a prima facie case of retaliation by the County. Because she has not stated a claim for retaliation under the Labor Code, the County did not waive its immunity from suit as to her retaliation claim. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015) (citing *Garcia II*, 372 S.W.3d at 636). The trial court, therefore, did not have subject-matter jurisdiction over Beatty's retaliation claim,

26

and it erred in denying the plea to the jurisdiction on this ground. *Garcia II*, 372 S.W.3d at 636; *see also Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 634 S.W.3d 324, 331 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (stating that failure to demonstrate prima facie case "means the court has no jurisdiction and the claim should be dismissed") (quoting *Garcia II*, 372 S.W.3d at 637). We sustain the County's third issue.

## Conclusion

We reverse the trial court's order denying the County's plea to the jurisdiction or alternatively, traditional and no-evidence motions for summary judgment, and render judgment dismissing Beatty's claims for lack of subject-matter jurisdiction.

Amparo Monique Guerra
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.